## Waters, Appellant, *v.* Samuel.

Argued April 16, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Samuel C. Tabbey,* with him *Bernard L. Lemisch,* and *Alfred I. Ginsburg,* for appellant.

*James Francis Ryan,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE BELL, May 23, 1951:

Pursuant to an ordinance of the City of Philadelphia, plaintiff was notified by an order of the Director of Public Safety dated May 29, 1950 that he would be honorably retired on his 65th birthday, which, as shown by the records of the Police Department, was June 6, *1950.*

Plaintiff thereupon brought *mandamus* proceedings against the Mayor of Philadelphia, Director of Public Safety and the Civil Service Commissioners of Philadelphia, praying the court to declare this order null and void and to restore him to the Civil Service List because (he averred) he would not be 65 years of age until June 6, *1952*.

The facts are briefly as follows: On October 22, *1910* plaintiff applied for the position of patrolman and stated under oath that he was born June 6, *1885*. When he was appointed a patrolman on July 12, *1911* he again swore that he was born June 6, *1885*; and the date of his birth was thereupon entered in the official records of the Bureau of Police by the Chief Clerk.

Plaintiff at the trial of this case produced a baptismal certificate (which was duly certified) evidencing that he was born June 6, *1887*. He testified that he never knew his true age *until 1922*, and that he did nothing thereafter about correcting the police records because if he were born in *1885* he could get the benefit of a two years pension. He admitted that in 1910 and 1911, when he made affidavits as to the date of his birth, he knew the date was not correct; but he justified this by the statement that nearly everybody becoming a policeman at that time added to their age. He tried to evade answering why he increased his age, but finally implied that it was because he had in mind he could go on pension sooner than he was entitled to. The trial judge sitting without a jury found that at the time plaintiff signed the affidavits in 1910 and 1911 he may have known his correct birthday, but that he did not believe that the City of Philadelphia had been harmed by the misstatement of facts. The trial judge then found in favor of plaintiff and ordered his reinstatement, mainly on the ground that there was no estoppel, relying on *Edelman v. Boardman*, 332 Pa. 85, 96, 2 A. 2d 393: "Estoppel occurs only where the act

alleged to effect it has caused harm to the person asserting it because of action taken by him in reliance upon such act."

The court, en banc, which included the trial judge, *reversed the Order* and found that the plaintiff had knowingly misrepresented his age at the time of his application and of his appointment, and that the misstatement of his age was dictated by dishonesty and constituted a fraud on the taxpayers, since it would enable plaintiff, if undetected, to be retired on pension two years in advance of his time.

When plaintiff applied for and was appointed a patrolman in 1911 it was well known that the Act of May 24, 1893, P. L. 129, enabled patrolmen who had reached a minimum age of 50 years to voluntarily retire on a pension (amounting to half pay) for life, and at the same time take another position while continuing to draw a police pension. It was also well known that the possibility of retirement at age 50 on half pay was at that time an inducement for persons to seek a position as a policeman. The City contends that if plaintiff and other members of the police force, who made similar false statements as to their age, can have their records changed and their real age recorded when they are about to be retired, (or at will), (a) disorder, confusion and inequalities will result in the management and operation of the Police Department and in its planned system of retirement of employees; and (b) the orderly processes of government will be endangered and sound principles of municipal economy will be violated.

A writ of mandamus is not a writ of right; and whether mandamus shall issue is a matter for the exercise of a sound discretion by the court: *Gold v. Building Committee of Warren Borough,* 334 Pa. 10, 5 A. 2d 367; *Reading v. Commonwealth,* 11 Pa. 196; *Achuff's Appeal,* 12 Pa. Superior Ct. 573.

If the interests of the general public would be injuriously affected, or if the object sought to be obtained is inequitable, or oppressive, or excessively burdensome, or is likely to create disorder and confusion in municipal or governmental departments, *the courts may, in their discretion, refuse to issue the writ: Sinking Fund Commissioners v. Philadelphia,* 324 Pa. 129, 135, 188 A. 314; *Wallace v. Board of Education of Los Angeles,* 147 P. 2d 8; *Oystermen's Dock Co. v. Downing,* 249 N. Y. S. 558, 232 App. Div. 295; 34 Am. Jur. 833 §40; 35 Am. Jur. 16 §240; 55 C. J. S. Mandamus §10a. Of course, the Court's discretion must be exercised on equitable principles and in accordance with well-settled rules of law: 55 C. J. S. Mandamus, §10, pp. 32, 33. We cannot say that the lower court abused its discretion in refusing to award a writ of mandamus.

Judgment affirmed at cost of appellant.