381 Pa. 561 (1955)
Maxwell, Appellant,
v.
Farrell School District Board of Directors.
Supreme Court of Pennsylvania.
Argued March 22, 1954.
March 14, 1955.
Before STERN, C.J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.
*562 Bernard Goldstone, with him Harvey E. Moore, for appellant.
Cyril T. Garvey, with him Anthony Perfilio, for appellees.
OPINION BY MR. JUSTICE BELL, March 14, 1955:
Plaintiff, a teacher duly certified and qualified to teach in our public schools, was appointed by the defendant School Board to teach as a "substitute teacher" during the school year 1947-48 and the school year 1948-49. The appointment was so recorded in the minutes of the School Board. Pursuant to this appointment the plaintiff taught the fourth grade, replacing Miss Gwenn Leyshon, a regular teacher, i.e., "a regular professional employe."
Plaintiff was also employed by defendants during each of the next three years, viz., 1949-50, 1950-51 and 1951-52. In each of these years the minutes of the School Board described the plaintiff as "a teacher" rather than "a substitute teacher" as they had in the first two years of her employment.
On March 13, 1952 defendant Hetra, Superintendent of Schools, notified the plaintiff by letter that the state legislature by the Act of January 14, 1952, P.L. 2018, 24 PS § 25-2518, had amended the Public School Code Act of March 10, 1949, P.L. 30, 24 PS, supra, to provide penalties in cases where a school district employs substitute teachers to fill a vacancy which exists for a full year or more. The letter added that "all teachers on a substitute basis who have one year agreements, may or may not have these agreements renewed next year." The plaintiff was not appointed for the year 1952-53. Plaintiff, contending she became a temporary professional employe in 1949 and was entitled to tenure, commenced this action in mandamus on July *563 14, 1953. The Court below sustained defendants' preliminary objections and dismissed the complaint.
The pertinent provisions of the Public School Code of 1949, supra, are:
"Section 1101. Definitions.  As used in this article,
"(1) The term `professional employe' shall include teachers, supervisors, supervising principals, principals, directors of vocational education, dental hygienists, visiting teachers, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists, school nurses who are certified as teachers and any regular full-time employe of a school district who is duly certified as a teacher.
"(2) The term `substitute' shall mean any individual who has been employed to perform the duties of a regular professional employe[*] during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent.
"(3) The term `temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal.
. . .
"Section 1108. Temporary Professional Employes.  It shall be the duty of the county superintendent of schools or the district superintendent, as the case may be, to notify each temporary professional employe, at least twice each year during the period of his or her employment, of the professional quality, professional *564 progress, and rating of his or her services. No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating. A temporary professional employe whose work has been certified by the county superintendent of schools or the district superintendent to the secretary of the school district, during the last four (4) months of the second year of such service, as being satisfactory shall thereafter be a `professional employe' within the meaning of this article. The attainment of this status shall be recorded in the records of the board and written notification thereof shall be sent also to the employe. The employe shall then be tendered forthwith a regular contract of employment as provided for professional employes. No professional employe who has attained tenure status in any school district of this Commonwealth shall thereafter be required to serve as a temporary professional employe before being tendered such a contract when employed by any other school district.
"Any temporary professional employe who is not tendered a regular contract of employment at the end of two years of service, rendered as herein provided, shall be given a written statement signed by the president and secretary of the board of school directors and setting forth explicitly the reason for such refusal.
"Temporary professional employes shall for all purposes, except tenure status, be viewed in law as full-time employes, and shall enjoy all the rights and privileges of regular full-time employes."
The basic contention of plaintiff is that her services as a school teacher cannot be terminated because under the Code she was a "temporary professional employe" from 1949 through 1952 and hence entitled to "professional *565 employe" status with its attendant tenure protection. The Board on the other hand insists that the plaintiff accepted each appointment as a substitute teacher in which case tenure status would never attach.
The School Board also contends (1) that since plaintiff's work had not been certified by the Superintendent as being satisfactory in accordance with the School Code, she could not attain the status of a "professional employe"; and (2) that she was entitled to the status of "professional employe" at the end of her second year, if ever, and since she made no claim to such status for more than two years she is barred by laches. The plaintiff contends that by failing to rate her work unsatisfactory during the course of her employment, the Superintendent waived his right to so rate her now. Therefore, she prayed (1) that the defendant Superintendent be commanded to rate her work satisfactory; (2) that the School Board be required to tender her a written contract as provided for "professional employes"; (3) that she be assigned regular teaching duties; and (4) that she be reimbursed for loss of salary.
We agree with the lower Court that mandamus should not be issued in this case. Miss Leyshon was employed by defendant School Board as "A regular professional employe" (teacher) prior to 1949. Neither the complaint nor the record is clear as to why she was absent thereafter, or whether her services were terminated by death or resignation or suspension or removal, or whether she was absent for legal cause authorized and approved by the Board of School Directors. An averment and proof of such facts would be indispensable if the case were to be decided on its merits. The reason is obvious from the Code which delineates in detail the difference between a substitute *566 teacher and a temporary professional (employe) teacher.
But even if it be assumed arguendo that plaintiff clearly averred that the services of Miss Leyshon, a regular teacher (whose place plaintiff took) had been permanently terminated by resignation or removal, plaintiff would not be entitled to the relief she seeks for two reasons, the first of which is that we cannot compel (as plaintiff requests) the Superintendent to give the plaintiff a satisfactory rating.
The law is clear that mandamus lies only when there is a clear legal right in the plaintiff and a corresponding duty in the defendant and only where the act requested is ministerial and not discretionary: Travis v. Teter, 370 Pa. 326, 87 A. 2d 177; Commonwealth ex rel. McLaughlin v. Erie County, 375 Pa. 344, 100 A. 2d 601. Cf. Kendall v. United States, 12 Peters 524, 9 L. Ed. 1181.
In Travis v. Teter, 370 Pa., supra, this Court said (page 330): "[Mandamus] is not a matter of right but in certain circumstances is a matter for the sound discretion of the court: Waters v. Samuel, 367 Pa. 618, 80 A. 2d 848. It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discretion and judgment of the official (who is vested with a discretionary power) which prevails and not that of a Court or a jury or a person aggrieved; and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable: Kaufman Construction Co. v. Holcomb, 357 Pa. 514, *567 55 A. 2d 534; Tenenbaum v. D'Ascenzo, 356 Pa. 260, 51 A. 2d 757; Anderson v. Philadelphia, 348 Pa. 583, 36 A. 2d 442; Souder v. Philadelphia, 305 Pa. 1, 156 A. 245."
Plaintiff recognizes these principles but argues that they have no applicability in the instant case because failure of the Superintendent to rate her work unsatisfactory now makes rating her "satisfactory" a ministerial act. We do not agree with this contention. The Public School Code of 1949[*] states, inter alia, that those "temporary professional employes" whose work is certified as satisfactory shall thereafter be "professional employes" and thus entitled to a regular contract of employment. It does not say that "professional employe" status shall accrue to those whom the Superintendent fails to rate unsatisfactory.
Article XI, § 1108 of the Code provides as follows: "It shall be the duty of the county superintendent of schools or the district superintendent, as the case may be, to notify each temporary professional employe, at least twice each year during the period of his or her employment, of the professional quality, professional progress, and rating of his or her services. No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating. A temporary professional employe whose work has been certified by the county superintendent of schools or the district superintendent to the secretary of the school district, during the last four (4) months of the second year of such service, as being satisfactory shall thereafter be a `professional employe' within the meaning of this article."
*568 It is clear from the Code that even if plaintiff were a temporary professional employe, she could not become a professional employe within the meaning of Article XI of the Code unless and until her work had been certified by the superintendent as satisfactory.
If plaintiff believed she was entitled to the status of a temporary professional employe in 1949-50 and in 1950-51 and during that period should have been rated by the superintendent "satisfactory" "at least twice each year", and that during or at the expiration of the last four months of the second year of such service she was entitled to a rating of a "professional employe", she should have promptly demanded the rights which appertained to her at that time and not waited until July, 1953. As Mr. Justice (now Chief Justice) HORACE STERN said in Ralston v. Derry Township School District, 363 Pa. 58, 69 A. 2d 69, at page 62: "But after the passage of the Act of 1939 he could not acquire tenure status except by meeting the conditions prescribed therein, which included the certification by the county or district superintendent, during the second year of his service, that the quality of his work was satisfactory."
Therefore, plaintiff is not entitled to mandamus because of her laches. It would certainly be difficult and might be impossible for a superintendent in July, 1953, to recall how plaintiff should have been rated twice in 1949 and in 1950 and in other years. If school teachers could, years after they might have been entitled to a higher rating as a teacher or years after another teacher had been employed in their place, successfully claim the status of a temporary professional employe or of a professional employe, it would create budgetary and debt difficulties for school districts which would certainly be contrary to the public interest.
*569 The Order of the Court below is affirmed; costs to be paid by appellant.
DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
On August 11, 1947, the Board of School Directors of the District of Farrell, Pennsylvania, appointed Mrs. Henrietta Maxwell substitute teacher for the school year 1947-48, and she served in that capacity for the year indicated. In June, 1948, she was reappointed as substitute and served for the year 1948-49. In June, 1949, she was appointed as a teacher and reappointed in that capacity in 1950 and 1951. She thus served three consecutive years under the designation of teacher  not substitute. At the end of the 1951-52 school term she was dismissed.
She filed a complaint in mandamus in the Court of Common Pleas of Mercer County to compel the school superintendent, John Hetra, to certify her as a temporary professional employe within the meaning of the Act of 1949 (March 10, P.L. 30). She prayed also that the court require the school authorities to assign her to regular teaching duties, and that she be paid the salary she would have earned had she continued teaching during the school year 1952-53.
The defendant School Board and the defendant School Superintendent filed preliminary objections to the complaint, asserting (1) that the court could not compel a public officer or board to perform discretionary acts in a stated manner; (2) that the plaintiff had another adequate remedy at law; and (3) that laches defeated Mrs. Maxwell's claim to relief.
The lower court dismissed the plaintiff's complaint, but not for the reasons assigned by the defendants. The court held that the plaintiff was a substitute employe and therefore not entitled to the rights of temporary professional employment.
*570 I believe that the court erred in finding contrary to the assertions of the complaint which, in the stage of preliminary objections, had to be accepted as true. The issue before the court below was not whether the facts set forth were correct, but whether as alleged they presented a good cause of action. Paragraph 21 of the plaintiff's complaint declared: "That plaintiff. . . for the years 1949-50, 1950-51 and 1951-52 . . . filling a regular vacancy, did perform the duties of a regular `professional employe' whose services were terminated. . ."
With this averment, Mrs. Maxwell brought herself within the definition of a temporary professional employe as defined in Article XI, Section 1101 of the School Code of March 10, 1949, P.L. 30, in force at the commencement of plaintiff's employment as a "teacher" prior to the amendment of May 14, 1949, P.L. 1365 sec. 2.: "(3) The term `temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal." (Emphasis supplied.)
That section defined a substitute to mean: "any individual who has been employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent." (Emphasis supplied.)
Mrs. Maxwell, from 1949 to 1951, was thus not occupying the niche of an absent employe; she was definitely replacing an employe (Miss Gwenn Leyshon) whose services had terminated. Her statement to that *571 effect in the complaint was binding upon the Court in its consideration of the preliminary objections.
In Love v. Redstone Township School District, 375 Pa. 200, 204, this Court said: "It is clear that the Legislature provided for two separate classifications to fill the positions created by the absence or leave of a professional employe. If the absence or leave were permanent then the position was to be filled by a temporary professional employe who later would be elevated to permanent status if found qualified. The vacancy which the Legislature intended a temporary professional employe to occupy is a position to which a teacher will not return. If there were no vacancy in this sense then this position was to be filled by a substitute."[*]
The court below, pointing out that Mrs. Maxwell was originally employed as a substitute, maintained that that status was constant throughout her five years' employment, but this conclusion is not warranted by the record. The plaintiff averred in her complaint (Paragraph 12) that she ". . . was appointed by the defendant School Board as a teacher for the school year 1950-51 at a salary of $2450 per year said appointment being duly recorded in the minutes of the defendant School Board." (Emphasis supplied.)
In Commonwealth ex rel. v. Sunbury School District, 335 Pa. 6, 10, we said: "It is clear, however, that this finding cannot be sustained, since proof of plaintiff's appointment is the minutes, and the terms of her selection cannot be supplemented or enlarged by extraneous evidence or by the actions or declarations *572 of the officials of the School District." (Emphasis supplied.)
In Potts v. Penn Township School District, 127 Pa. Superior Ct. 173, 177, the Superior Court said: ". . . The basic requirement of employment of a public school teacher is an election or appointment by the board of school directors duly recorded on the minutes of the board."
That the lower court was not overly certain of its conclusions is evidenced by the statement in its opinion: "The right of the board to have permitted a substitute to teach for a continuous period of five years is, at least, doubtful, however, the action of the board in so doing could not create a tenure status for the substitute."
It is inescapable that Mrs. Maxwell was either a substitute or a temporary professional employe. The lower court questions that she could have been a substitute for five years, and yet excludes the possibility that she could have been acquiring a tenure status. (the status of a temporary professional employe) With this reasoning, the learned Court propounds an unanswered riddle: What was Mrs. Maxwell in the twilight period when she ceased being a substitute and yet had not acquired the status of a temporary professional employe?
The court's fundamental error in its reasoning lies in the assumption that Mrs. Maxwell's "rights were dependent entirely upon the terms of her original appointment as a substitute." This suggests that a teacher's status, like the Egyptian pyramids, can never change. The whole School Code is proof to the contrary. Not only is it a fact that the Board changed Mrs. Maxwell's status from substitute to temporary professional employe, but, as indicated in Love v. Redstone Township School District, supra, the Board *573 was compelled to fill Miss Leyshon's position with a temporary professional employe since Miss Leyshon's position had terminated. Not only did Mrs. Maxwell become a temporary professional employe once she took Miss Leyshon's place as a teacher, but, if she later qualified in that respect, she was entitled to be elevated to a permanent status.
It is precisely because of these possible and inevitable mutations in the status of teachers, that the Code[*] specifically provides: "It shall be the duty of the county superintendent of schools or the district superintendent, as the case may be, to notify each temporary professional employe, at least twice each year during the period of his or her employment, of the professional quality, professional progress, and rating of his or her services."
The object of this mandate, obviously, is to develop the highest possible pedagogical standards by notifying teachers of their shortcomings, if any, so they may be corrected; and, by encouraging and inspiring them to greater efforts with commendations, if they are entitled to them. As we said in Com. ex rel. v. Sunbury School District, 335 Pa. 6, 11, "The fundamental policy of our public school system is to obtain the best educational facilities for the children of the Commonwealth." Further, "The success of the school depends upon the efficiency of the teachers."
Superintendent Hetra had a statutory obligation as already indicated, to inform Mrs. Maxwell of faults or virtues in her teaching methods. It is not clear why, over a period of three years, he ignored this requirement. Without pronouncing that Superintendent Hetra was derelict in his duties in the following respects, it *574 must be stated as a general proposition that a superintendent may not, by failing to visit a schoolroom, omitting to study records, neglecting to question supervisors and other teachers, shutting his eyes to routine observation and closing his ears to prevalent reports, plead ignorance to those facts he is required by law to know. Nor can his failure to fulfill a task assigned to him by the code be made to work to the disadvantage of the school teacher who, in the absence of any notification to the contrary, has the right to assume that he or she is discharging her duties ably, conscientiously and industriously.
The School Code[*] declares: "No temporary professional employe shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating."
The superintendent also failed to execute this specific statutory mandate. The plaintiff thus asserts in her complaint that since her services were not rated unsatisfactory and she was not notified of any such unsatisfactory rating, her dismissal was "illegal, unlawful and without authority."
The School Code provides further: "Any temporary professional employe who is not tendered a regular contract of employment at the end of two years of service, rendered as herein provided, shall be given a written statement signed by the president and secretary of the board of school directors and setting forth explicitly the reason for such refusal. Temporary professional employes shall for all purposes, except tenure status, be viewed in law as full-time employes, and *575 shall enjoy all the rights and privileges of regular full-time employes."
This specific direction in the School Code was also honored in the breach, since Mrs. Maxwell did not receive a contract or a written statement giving reasons for the refusal. In the case of Jacobs v. Wilkes-Barre Twp. Sch. Dist., 355 Pa. 449, 452, we said: "Where a school board undertakes to terminate a contract with a professional employee, the procedure set forth in the Act must be strictly followed, and failure on the part of the board to comply therewith renders the attempted dismissal abortive."
In Snyder v. Washington Twp. School District, 117 Pa. Superior Ct. 448, the Superior Court emphasized that if a dismissed school teacher "was not accorded every right secured to her by the Code, her dismissal was illegal and she is entitled to recover her salary for the remainder of the term."
Were the law to be declared otherwise, a superintendent could perpetually wall up the door through which the temporary employe passes into permanent status by the simple device of failing to post required ratings. Since it has not been denied that the defendant superintendent failed to rate the plaintiff in accordance with the code's specified directions, it follows that the plaintiff was illegally dismissed and she accordingly is entitled to salary for the school year 1951-52, less, of course, any amount she may have earned during that period.
The plaintiff also seeks a satisfactory rating from the superintendent. There is no doubt that the superintendent can be compelled to award the plaintiff a rating. "It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion.. . ." (Travis v. Teter, 370 Pa. 326)
*576 Upon receipt of a satisfactory rating, the plaintiff would be entitled, of course, to the status of professional employe and all the rights incident to that status, including a written contract. If such a contract is not tendered, she then is to receive a rating and statement signed by the president and secretary of the board setting forth explicitly the reasons for the refusal of the contract. In Love v. Redstone Township School District, supra, page 204, this Court pointed out: "that if after a two year probationary period the temporary professional employe is found proficient he becomes entitled to the status of a permanent professional employe."
It would not do violence to the law of normal sequence if a teacher were to conclude, in the absence of complaint from her superiors after two years of teaching, that her work was proficient. However, whatever controversy might arise in this connection would fall into the realm of factual disputation which is not within the jurisdiction of this Court, especially at this juncture, and, in any event could only require a decision here in the event of a charge of abuse of discretion in the nisi prius court.
I would remand the case to the lower court for renewed consideration in the light of the principles herein enunciated.
NOTES
[*] Italics throughout, ours.
[*] March 10, 1949, Art. XI, § 1108, 24 PS § 11-1108.
[*] Although this case involved an interpretation of the Act of June 20, 1939, P.L. 482 (24 PS § 11-1108) the language is equally applicable to the same definition of temporary professional employe appearing in the School Code of March 10, 1949, prior to the May 14, 1949 amendment.
[*] Art. XI, § 1108 of the Act of March 10, 1949, P.L. 30  24 PS § 11-1108.
[*] Sec. 1108 of Art. XI of the Act of March 10, 1949, P.L. 30  24 PS § 11-1108.