## Singer v. State Board of Pharmacy

*Brumbelow & Comisky*, for plaintiff.

*Melvin Rubin, Alan Miles Ruben* and *George W. Schreck*, Assistant Attorney General, for defendant.

KREIDER, J., June 21, 1961.—We have before us the motion of plaintiff, Simon Singer, to take off the compulsory nonsuit entered by this court at the close of his case in chief at the trial of his action in mandamus to establish his right to, and compel the return of, his pharmacy permit for the year beginning July 1, 1958, and ending June 30, 1959. Plaintiff averred in his complaint that this permit was illegally obtained from him on or about November 15, 1958, by Cecelia Cohen, investigator of professional licensing of the Pennsylvania Department of Public Instruction, and an agent of defendant, the State Board of Pharmacy.

After defendant-board's preliminary objections were overruled, the board filed an answer in which it admitted that the plaintiff is a pharmacist registered under the laws of the Commonwealth of Pennsylvania but denied that he operates a pharmacy in the City of Philadelphia. It averred, on the contrary, that he operates a cut-rate store with no intention to operate wthin the scope of the laws of Pennsylvania relative to the operation of a pharmacy. The board further averred in its answer that a permit was mailed out to plaintiff through a clerical error on the part of the administrative staff of the Department of Public Instruction and not through any act of defendant. Defendant also averred that when Cecelia Cohen informed plaintiff, Singer, in June 1958 that he was not entitled to have the permit which had been sent to him, he voluntarily agreed and surrendered it to her. The answer denied that repeated demands had been made upon defendant for the return of the permit and that it had refused to do so.

It should be made clear that plaintiff's registration "*as a pharmacist* indicates he had the right to dispense drugs": N. T. 32. Plaintiff had *not* been cited for suspension or revocation of his *license* as a pharmacist, but his *permit* to operate a pharmacy at a particular place without a sanitary sink in his pharmaceutical department is being questioned by the board in this proceeding.

Plaintiff filed his complaint in mandamus on January 23, 1959. Plaintiff's brief in opposition to defendant's preliminary objections was filed April 10, 1959. The permit in question expired by its terms on June 30, 1959. After the board's preliminary objections were overruled, the case came on for hearing.

The principal contention of plaintiff is that he has stated a cause of action entitling him to maintain an

action in mandamus against the pharmacy board *to establish his right to the permit*, his authority to operate his drug store under the permit and to compel the return of the permit. In his brief of argument, plaintiff states that he is *entitled to have this court declare valid his operation of his pharmacy during the licensure period in question* and to have declared illegal the action of the State Board of Pharmacy in "confiscating his permit," which the board, in its answer, averred plaintiff surrendered voluntarily to the board's agent.

The root of this dispute is the failure of plaintiff, Simon Singer, to install a sink in the prescription department of his drug store. Instead, he apparently used a sink in his *lavatory* for cleansing his pharmaceutical utensils. The pharmacy board directed him to install a new sink in his prescription department, but he declined to do so. Plaintiff had been the holder of a permit to operate a pharmacy from July 1, 1956, to June 30, 1957, when his permit expired. The board did not issue a permit to him for the following year, viz., July 1, 1957, to June 30, 1958, but invited plaintiff to appear before it to clear up his noncompliance with the board's rules and regulations. Plaintiff appeared before the board in August or September 1957 and requested time to meet the board's requirements. He was invited again to appear before the board in October of 1957, but he did not do so. Instead, his counsel wrote to the board on November 5, 1957 [1]

---

[1]
"Room 362 City Hall
Philadelphia 7, Penna.
November 5, 1957

"State Board of Pharmacy
Education Building
Harrisburg, Pennsylvania

"Mr. Simon Singer of 46th and Market Streets, Philadelphia, has requested me to inform you that he does not intend, at this

256

stating that his client did not desire to operate his pharmacy until further notice. Consequently, the board did not issue a permit to plaintiff to operate a pharmacy for the licensure period July 1, 1957, to June 30, 1958, inclusive. However, in May of 1958, plaintiff sent an application to the board for a permit for the period now in question, viz., July 1, 1958, to June 30, 1959, but plaintiff did not fill up and answer a questionnaire which the board contends was required, nor did he install a new sink which the board required as a prerequisite to the issuance of a permit.

Despite plaintiff's noncompliance, he subsequently obtained, in some manner, a permit from the board's offices for the period beginning July 1, 1958, through June 30, 1959. As heretofore stated, the board in its answer averred that the permit in question "was mailed out to plaintiff *through a clerical error* on part of the administrative staff of the Department of Public Instruction and *not through any act of defendant*."

Mrs. Dorothy Williams, a board member, called as a witness by plaintiff, testified (N. T. 50) : "We put a flag on his (plaintiff's) permit for 1958-1959, we received information." In answer to a question:

---

time, to press his application for the issuance of a permit to operate a pharmacy at the above address.

"Mr. Singer feels that the expense of remodeling the pharmacy, particularly the installation of a sink, is greater than he can afford. You have required these alterations as a pre-requisite to the issuance of a permit.

"At the end of six months Mr. Singer intends to review the situation and at that time determine whether to again present his application for an operating permit.

"Accordingly, until further notice Mr. Singer will discontinue the operation and advertising of his pharmacy.

Very truly yours,
/s/ *Alan M. Ruben*
Alan M. Ruben, Esq."

"When you say 'put a flag' on it, what do you mean? she replied: "There was a lot of correspondence about Simon Singer. We received information from the investigators that he had no sink in his prescriptions department; that he had a dirty store, we put a flag on that permit and we were going to hold it until— we just put a flag on it until—until a citation was issued for him to come in and we would decide what to do with it."

Plaintiff averred in his complaint that defendant never ordered plaintiff to discontinue operating his pharmacy. This was denied by defendant in its answer, in which it averred that plaintiff was told by defendant's agent to discontinue operating his store as a pharmacy. In paragraph 10 of the complaint, it is also averred that:

"10. Plaintiff never has been afforded an opportunity to answer charges preferred against him, if such exist, nor has he been granted a hearing before the State Board of Pharmacy in any proceeding relating to, or arising out of, the taking of his permit."

In answer thereto, defendant denied plaintiff's allegation and stated that "it is rather averred that plaintiff never requested a hearing before the State Board of Pharmacy but that after the institution of the mandamus action, the defendant attempted to give plaintiff a hearing but that plaintiff refused to appear at said hearing." The evidence disclosed that, upon advice of counsel, plaintiff refused to attend any hearing after he received through the mail his permit for the year beginning July 1, 1958, and ending June 30, 1959.

At the close of plaintiff's evidence, the deputy attorney general representing the board stated in open court that the board bore no animosity toward plainiff, and that it would give him a permit if he rectified

the sanitary condition in his pharmacy by installing a sink in his laboratory instead of using the sink in the *lavatory* for pharmaceutical purposes. Counsel for plaintiff did not accept the offer of the board, and advised its counsel and the court that it came too late: N. T. 195-96. Whereupon, the court, being of the opinion that the complainant had not made out his case, granted defendant's motion for a compulsory nonsuit and dismissed the proceeding.

In passing upon plaintiff's petition in mandamus, various fundamental principles of law must be kept in mind. In Maxwell v. Farrell School Dist. Board of Directors, 381 Pa. 561, 566-67 (1955), Mr. Justice Bell, speaking for the Supreme Court, said:

"The law is clear that mandamus lies only when there is a clear legal right in the plaintiff and a corresponding duty in the defendant and only where the act requested is ministerial and not discretionary: Travis v. Teter, 370 Pa. 326, 87 A. 2d 177; Commonwealth ex rel. McLaughlin v. Erie County, 375 Pa. 344, 100 A. 2d 601. Cf. Kendall v. United States, 12 Peters 524, 9 L. Ed. 1181.

"In Thavis v. Teter, 370 Pa., supra, this Court said (p. 330) : '[Mandamus] is not a matter of right but in certain circumstances is a matter for the sound discretion of the court: Waters v. Samuel, 367 Pa. 618, 80 A. 2d 848. It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discretion and judgment of the official (who is vested with a discretionary power) which prevails and not that of a Court or a jury or

a person aggrieved; and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable: Kaufman Construction Co. v. Holcomb, 357 Pa. 514, 55 A. 2d 534; Tenenbaum v. D'Ascenzo, 356 Pa. 260, 51 A. 2d 757; Anderson v. Philadelphia, 348 Pa. 583, 36 A. 2d 442; Souder v. Philadelphia, 305 Pa. 1, 156 A. 245.' "

In Purcell v. Altoona, 364 Pa. 396 (1950), the court stated:

"To sustain the contention of Vance would not benefit him in any way, and it is a fundamental principle that the writ of mandamus will never be granted in cases where, if issued, it would prove unavailing: Underwood v. Gendell, 227 Pa. 214, 75 A. 1092. Vance's petition, therefore, was correctly dismissed."

Underwood v. Gendell, 227 Pa. 214, likewise is authority for the rule that " 'Where the right is, or will become, a mere abstract right, the enforcement of which, by some change of circumstances, can be of *no substantial or practical benefit to the petitioner, mandamus will be denied:* 26 Cyc. L. & Pr. 156.' " (Italics supplied).

We think plaintiff's basic contention is expressed in his brief of argument as follows:

"Upon the facts established of record, plaintiff has demonstrated his right to his 1958-59 pharmacy permit, and asks the Court, in this present mandamus proceeding, to confirm judicially that right. He asks the Court to declare that he was entitled to operate his pharmacy in 1958-59, that he was authorized to conduct his business during that period, and that the State Board of Pharmacy was wrong in confiscating his permit and denying him the right to practice his profession and operate his drug store."

As heretofore stated, the board contends that the last date on which plaintiff was legally authorized to operate a pharmacy was June 30, 1957, at which time his permit expired. During the next yearly term, plaintiff had no permit, principally because he had failed to install a sink with hot and cold water in his laboratory.

This was the situation in May 1958 when plaintiff, without correcting the sanitary conditions of which the board complained, forwarded to its office an application for a permit for the period in question, July 1, 1958 to June 30, 1959. The board's answer, as above stated, averred that, due to a mistake in the clerical section of the Department of Public Instruction, a permit for the said period was mailed to plaintiff in response to his application, but without action of approval by the board.

Plaintiff now stands on this "permit" and contends that he has demonstrated his right to it and demands that the court, in his mandamus proceeding, "confirm judicially that right." In view of the authorities above cited, we have some doubt that plaintiff has presented such a clear right in this mandamus proceeding as to require the court to declare that he was entitled to operate his pharmacy during the permit period July 1, 1958, to June 30, 1959, in view of all the circumstances revealed by the evidence. The health and welfare of the men, women and children who patronized plaintiff's pharmacy must also be considered in determining whether we should put our stamp of approval upon plaintiff's course of conduct.

In our opinion, the manner in which plaintiff's permit for the period in question was returned to the board is not the controlling issue in this case. If the permit was repossessed illegally by an agent of the board, plaintiff has adequate remedy at law to obtain

it. Plaintiff has not chosen to avail himself of such remedy but bases his action in mandamus on his version of this *single* facet of the *entire* factual situation in an endeavor to secure the overall confirmation by this court of his conduct and alleged right to conduct a pharmacy in violation of the sanitary regulations of the board. We think that whether or not plaintiff was entitled to the pharmacy permit in dispute involved an exercise of discretion by the board and not the performance of a mere ministerial duty. This is not a case of merely renewing a license which was in existence immediately prior to the period in question, because plaintiff had no permit for the year beginning July 1, 1957, and ending June 30, 1958. During that time, as stated, plaintiff and his counsel had appeared before the board but later abandoned their request for a permit. Consequently, the board contends that when plaintiff forwarded his application for a permit for the 1958-59 period, he should have accompanied it with an executed questionnaire allegedly required by rule 7 of the board and the regulations which plaintiff stressed and introduced in evidence: N. T. 144, plaintiff's exhibit 7.

Since plaintiff failed to conform with the sanitary regulations of the board,[2] it is rather difficult to see how the board could have granted him a permit. Nevertheless, plaintiff asserts that it is now the duty of this court to give its judicial sanction to his conduct and "confirm judicially" his alleged right to operate his pharmacy during the period in question. Since the board apparently could not do this under its own rules

---

[2] The board's regulation no. 8 (plaintiff's exhibit 7, N. T. 222), provides:

"8. Sanitation, Ventilation, Cleanliness, etc.

"Every pharmacy shall be well lighted, well ventilated, and kept in a clean, orderly and sanitary condition."

and regulation, there may be some question as to our right to do so, and especially is this true if plaintiff voluntarily surrendered his permit to an agent of the board as alleged in its Answer.

Because of the disposition we shall make of plaintiff's motion to take off the nonsuit, we do not deem it necessary to discuss various other contentions made by him. We may remark, however, that we do not share the apprehension to which his counsel refers in his brief, viz., that the determination of the question whether plaintiff was lawfully entitled to operate his pharmacy during the period in question will affect his right to obtain a permit in the future. In support of defendant's motion for a compulsory nonsuit, the deputy attorney general representing the board repeatedly stated to the court and plaintiff's counsel that the board is willing to grant a permit to plaintiff if he will comply with its regulations.[3]

We are likewise unimpressed by the argument that the present proceeding represents only one phase of a continuing controversy between the parties and that "the issue, therefore, in the present proceeding is likely

---

[3] Mr. Schroeck (N. T. 187) :

"In conjunction with that point, we offer our fifth reason: Even though the State Board of Pharmacy had afforded a hearing to the plaintiff, and even though it had prepared an adjudication which was not issued, the State Board of Pharmacy stands ready to grant the plaintiff a pharmacy permit provided he complies with the prerequisites for a pharmacy permit to issue provided he has the necessary equipment, inventory and other requirements to operate his establishment as a pharmacy.

"5. That the State Board of Pharmacy, even though it has afforded the plaintiff a heairng in the instant matter, has no prejudices against plaintiff, has so informed him many times, and is ready and willing to grant him a current pharmacy permit provided he has the necessary equipment, inventory, and other requirements to operate his establishment as a pharmacy": N. T. 197.

to re-occur frequently and thus saves the present case from mootness": Plaintiff's Brief, page 12. For the reasons stated, we think this alleged apprehension is also without foundation.

Plaintiff seems to rest his case on the premise that the paper received by him through the mail in June 1958 constituted a license or permit, whether he was entitled to it or not. The courts, however, have held that a certificate, when inadvertently issued by a subordinate of a State agency, is not a license in itself but is only evidence of the same, and that a license must be granted by board action of which there is an official record. See State ex rel. Peterson v. Martin, 176 P. 2d 636 (Supreme Court of Oregon, 1947). In the instant case, there does not appear thus far to be conclusive evidence as to whether formal action was taken by the board on plaintiff's application for a 1958-59 permit, nor has the board had an opportunity to present evidence as to the manner in which the permit was sent out and later returned to its offices. This situation obviously is due to the fact that defendant's motion for a compulsory nonsuit was granted by the court at the close of plaintiff's evidence. While we may have some doubt at this stage that plaintiff's right to maintain his action in mandamus is clear, we feel that the interest of the public and the parties would be served best if the board were permitted to introduce evidence as to these and other pertinent matters, and the plaintiff likewise were permitted to offer such additional evidence as may be relevant. For the foregoing reasons, we make the following

### Order

And now, June 21, 1961, the motion to take off the compulsory nonsuit heretofore entered in this case is granted.