630 A.2d 984

**Janice STORK**

v.

**Harold SOMMERS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 13, 1993.

Decided Aug. 19, 1993.

R. Russell Pugh, for appellant.

Neil Albert, for appellee.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

COLINS, Judge.

Harold Sommers (Sommers) appeals two October 9, 1992 orders of the Court of Common Pleas of Lancaster County (Common Pleas), one of which denied Sommers' petition for disqualification of counsel and the other of which granted Janice Stork's (Stork) motion for judgment on the pleadings.

The parties in this matter are elected officials of the City of Lancaster (Lancaster), a third class city governed by The Third Class City Code (Code)[1] and utilizing the "mayor-council plan A" option.[2] Sommers is the Treasurer of Lancaster and Stork is the Mayor of Lancaster. The present controversy arises out of Sommers' refusal to sign checks related to funds in Lancaster's capital fund. Sommers wrote a July 22, 1992 letter to Robert Oaster, Director of Administrative Services for Lancaster, in which Sommers stated that he would not sign any checks that relate in any way to the capital fund, until the Lancaster City Council reversed its decision to block an investigation into certain improprieties Sommers believed had occurred.

Sommers alleges that Stork, in her capacity as mayor, engaged in fraudulent abuses with regard to the capital fund, including an attempt to operate a proprietary scheme with Lancaster's funds. According to Sommers, this scheme basically consisted of a plan for Lancaster to borrow more money

1. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

2. See Article IV, Sections 401–421 of the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41401–41421.

than it needed for its budget and then to invest the surplus in an attempt to make a profit. Sommers maintains that the scheme failed, because the investment return on the surplus was lower than the rate of interest Lancaster paid to borrow the money. Sommers also charges that Stork engineered the scheme by deceiving City Council, which alleged fact, in his view, legitimated his decision not to sign Lancaster's checks and disburse funds from the capital fund.

On July 29, 1992, Stork filed a complaint in mandamus requesting that Common Pleas require Sommers to resume signing checks related to the capital fund. On July 31, 1992, Common Pleas entered a peremptory judgment in Stork's favor, which judgment required Sommers to resume signing the capital checks. Common Pleas also set a hearing date.

Before Common Pleas conducted the mandamus hearing, Stork filed a motion for judgment on the pleadings, alleging that Sommers was obligated by statute to sign the checks regardless of any allegations he could prove or any justifications he could present. Common Pleas agreed with Stork's position, ruling that the treasurer of a third class city has a ministerial function and a mandatory duty, as the custodian of public funds, to sign checks for lawful vouchers presented to him. Common Pleas granted Stork's motion for judgment on the pleadings and directed Sommers to resume signing checks that are duly presented to him.

Additionally, throughout these proceedings, Stork has been represented by the City Solicitor, Robert L. Pfannebecker, Esquire (Pfannebecker). Sommers moved, in Common Pleas, for the disqualification of Pfannebecker, alleging a conflict of interest, because Pfannebecker was obligated to represent him since he is Lancaster's treasurer. Sommers argues that because Pfannebecker represented Stork without Sommers' permission, Pfannebecker violated rules of professional conduct and should have been disqualified by Common Pleas. Common Pleas denied Sommers motion for disqualification.

Sommers appealed to this Court for review of Common Pleas' October 9, 1992 orders, which granted Stork's motion

for judgment on the pleadings and which denied Sommers' petition for disqualification of counsel. Our scope of review of Common Pleas' decision is limited to determining whether constitutional rights have been violated or whether Common Pleas abused its discretion or committed errors of law. *Kearney v. City of Philadelphia*, 150 Pa.Commonwealth Ct. 517, 616 A.2d 72 (1992). Sommers raises three issues on appeal.

## I. SHOULD THIS COURT REVIEW ONLY THE PLEADINGS THEMSELVES?

First, Sommers argues that when reviewing Common Pleas' grant of judgment on the pleadings, this Court should consider not only the pleadings themselves but also Sommers' submitted "offer of proof" as to what would have been presented at trial. Sommers' offer of proof consists primarily of his allegations of misconduct by Stork and other Lancaster officials. Sommers submits that pursuant to *Giannini v. Carden*, 286 Pa.Superior Ct. 450, 429 A.2d 24 (1981), a trial court should consider both the actual record and the record that could be created at trial.

After reviewing *Giannini*, we do not see its applicability to the present case. In *Giannini*, a plaintiff made vague allegations in his complaint but did not support the allegations with affidavits or by pleading sufficiently detailed facts. The defendant moved for and was granted summary judgment, because the court held that the plaintiff could not rely on mere unsupported allegations in the pleading stage to get to trial. *Giannini* is plainly inapplicable to this case and does not otherwise support Sommers' position.

An accurate statement of the law on this issue may be found in *Giddings v. Tartler*, 130 Pa.Commonwealth Ct. 175, 178, 567 A.2d 766, 767 (1989), which states that review of "a motion for judgment on the pleadings is exclusively limited to the pleadings themselves; no other outside material may be considered." Accordingly, any of Sommers' allegations that were not included in the pleadings will be disregarded by this Court in reviewing Common Pleas' decision and order.

## II. WAS COMMON PLEAS' GRANT OF A MOTION FOR JUDGMENT ON THE PLEADINGS AN ERROR OF LAW?

Second, Sommers argues that Common Pleas erred, when it granted Stork's motion for judgment on the pleadings. A motion for judgment on the pleadings should be granted only when there exists no genuine issue of fact and when the moving party is entitled to judgment as a matter of law. *Giddings.*

Common Pleas granted Stork's motion for judgment on the pleadings, because both of these conditions were met. Common Pleas determined that the facts were not disputed, that Sommers is the treasurer of a third class city, and that he refused to sign checks to allow payment of warrants duly presented to him. Common Pleas also opined that the treasurer of a third class city, under Section 1403 of the Code, 53 P.S. § 36403, had a ministerial, nondiscretionary duty to sign all checks duly presented to him for payment. Common Pleas concluded that since a third class city treasurer does not have discretion in the area of signing checks, Stork was clearly entitled to the relief requested. It granted judgment on the pleadings and entered an order in mandamus that required Sommers to sign checks duly presented to him.

We agree with Common Pleas' reasoning. Section 1403 of the Code, 53 P.S. § 36403, provides: "The city treasurer ... *shall* pay all warrants duly countersigned by the director of accounts and finance and the city controller." (Emphasis added.) The use of the word "shall" in this part of the statute clearly indicates that the treasurer has a ministerial and mandatory duty, rather than a discretionary duty, to sign the checks.

The treasurer's authority differs markedly from that of a city controller and the director of a Department of Accounts and Finance, both of whom possess discretionary powers. Section 1706 of the Code, 53 P.S. § 36706, provides, in pertinent part: "The city controller shall ... countersign all warrants for the payment of moneys out of the city treasury *when*

*satisfied of the legality of such payment."* (Emphasis added.) Section 1805 of the Code, 53 P.S. § 36805, provides:

> The director of the Department of Accounts and Finance shall countersign all warrants upon the city treasury, the form whereof shall be prescribed by council, and shall not suffer any appropriation made by the council to be over-drawn. No warrant shall be countersigned unless there is money in the treasury to pay the same. Except in the case of warrants for the payment of moneys to volunteer fire companies, whenever a warrant on the treasurer shall be presented to the director of accounts and finance to be countersigned, the person presenting the same shall be, by the said director, required to produce evidence:
>
> (1) That the amount expressed in the warrant is due to the person in whose favor it is drawn.
>
> (2) That the supplies, services or other consideration for payment of which the warrant is drawn have been fur-nished, performed or given according to law and the terms of the contract, if any.

The treasurer, unlike the controller and the director of the Department of Accounts and Finance, is directed by the Code to sign the checks without any conditions attached. The treasurer's duty is purely ministerial. It is well established that mandamus will lie against a Commonwealth official when that official clearly has a ministerial duty to perform but refuses to do so. *Camiel v. Thornburgh,* 507 Pa. 337, 489 A.2d 1360 (1985); *West Penn Power Company v. Cohen,* 502 Pa. 25, 463 A.2d 418 (1983).

Sommers argues that Common Pleas erred in granting Stork's motion for judgment on the pleadings, because, even if Sommers had a ministerial duty as the treasurer to sign checks, mandamus could be withheld if the court found that Sommers had a valid reason for refusing to sign the checks. Sommers relies on *D.N. Corporation v. Roudabush,* 309 Pa. 393, 164 A. 60 (1932) and *Waters v. Samuel,* 367 Pa. 618, 80 A.2d 848 (1951) to support his position. In *D.N. Corporation*

and *Waters*, our Supreme Court held that even where the act sought to be compelled is ministerial in nature, mandamus could be withheld where that act would be illegal, invalid, in violation of statute, or detrimental to the interests of the general public.

We conclude that Common Pleas did not overlook *D.N. Corporation* and *Waters* when it granted Stork's motion for judgment on the pleadings. Sommers presented these cases in his brief opposing Stork's motion for judgment on the pleadings. When Common Pleas granted Stork's motion, it clearly decided, as a matter of law, that Sommers had not pled facts which would comprise illegal or invalid acts if proven at trial. Common Pleas determined that the exceptions to compelling performance of a ministerial act set out in *D.N. Corporation* and *Waters* did not apply and chose to issue the writ of mandamus.

 It is well established that the question of whether mandamus should issue is a discretionary matter for the courts. *Hilton v. State Employees' Retirement Board*, 23 Pa.Commonwealth Ct. 639, 353 A.2d 883 (1976), *reversed on other grounds*, 470 Pa. 301, 368 A.2d 640 (1977); *Frank v. Tucker*, 21 Pa.Commonwealth Ct. 383, 346 A.2d 848, *affirmed per curiam*, 464 Pa. 1, 345 A.2d 702 (1975). Common Pleas decided this matter at the conclusion of the pleadings, because whether mandamus should issue is a question of law that can be decided on undisputed facts. Accordingly, we conclude that Common Pleas did not commit an error of law, when it granted Stork's motion for judgment on the pleadings.

### III. SHOULD COMMON PLEAS HAVE DISQUALIFIED THE CITY SOLICITOR?

Third, Sommers argues that Common Pleas erred, when it refused to disqualify Pfannebecker from representing Stork. Sommers submits that it was improper for Common Pleas to

permit Pfannebecker to represent Stork, because Pfannebecker had a statutory duty to represent him in his capacity as Lancaster's treasurer and had, in fact, rendered legal advice to Sommers on several previous occasions.

■ Sommers asserts that Pfannebecker should have been disqualified from this matter, because Section 1603 of the Code, 53 P.S. § 36603, mandates that a city solicitor both "commence and prosecute all and every suit or suits, action or actions, brought by the city" and "defend all actions or suits against the said city or any officer thereof." Sommers' argument is that Common Pleas should have disqualified Pfannebecker from representing either party, absent permission by both parties, because Pfannebecker had a statutory duty to represent both parties in this matter. We disagree.

Rule 1.7 of Pennsylvania's Rules of Professional Conduct provides that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless ... each client consents after consultation." In the comment following the rule it is stated in pertinent part:

> Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client.... By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party.

Common Pleas determined that the instant matter is a circumstance where Pfannebecker, as Lancaster's solicitor, could represent Stork, in her capacity as Mayor of Lancaster, against Sommers. Common Pleas reasoned that confidential information about this matter had not been divulged to Pfannebecker by Sommers. Sommers had consulted Pfannebecker on six occasions for various reasons, but none involved Sommers' refusal to sign checks. Sommers has not asserted that

he consulted Pfannebecker regarding his refusal to sign checks.

Moreover, Pfannebecker was bound both by Article 125, Section 125.01 of the Lancaster City Code [3] and Sections 1205 and 1603 of the Code [4] to follow Stork's instructions in this matter. Therefore, Pfannebecker's representation of Stork was proper because, ultimately, Lancaster, itself, rather than an individual official, is Pfannebecker's client in his role as City Solicitor.

After Pfannebecker had agreed to prosecute the mandamus action on behalf of Stork, it was impossible for Pfannebecker to also represent Sommers. Nonetheless, because Sommers was acting in his official capacity as Treasurer when refusing to sign checks, he was entitled to legal representation by the City Solicitor's office pursuant to Section 1603 of the Code. *Silver v. Downs*, 493 Pa. 50, 425 A.2d 359 (1981). The Lancaster City Council properly addressed this situation. First, it authorized the Assistant City Solicitor to represent Sommers in the litigation, but the assistant solicitor declined because of an apparent conflict of interest.[5] City Council then authorized Gregory Paulson, Esquire (Paulson), to represent

---

3. Article 125, § 125.01 provides, in pertinent part:

 A City Solicitor shall be appointed by the Mayor, by and with the advice and consent of Council, who shall serve for a term of four years, concurrent with that of the Mayor. He shall be removable from office at the discretion of the Mayor upon written notice of intention to Council, as provided for heads of departments.

 (a) The City Solicitor shall perform such legal services for the City as are provided in the Third Class City Code and such other duties as may be required by the Mayor or Council. . . .

4. Section 1205 of the Code, 53 P.S. § 36205, provides, in pertinent part: "The mayor shall supervise the conduct of all city officers. . . ."

 Section 1603 of the Code, 53 P.S. § 36603, provides, in pertinent part: "[The City Solicitor] shall do all and every professional act incident to the office which he may be lawfully authorized and required to do by the mayor, or by any ordinance or resolution of the council."

5. Lancaster does not employ a full-time solicitor who works exclusively for it. Lancaster employs attorneys from private firms as city solicitors. Common Pleas' opinion implied that there would not be an inherent conflict of interest for the Assistant City Solicitor to oppose Pfannebecker, because the two attorneys worked for different law firms.

Sommers.[6] We, therefore, conclude that Common Pleas did not err, when it did not disqualify Pfannebecker from representing Stork in this case.

Accordingly, the October 9, 1992 orders of Common Pleas are affirmed.

## ORDER

AND NOW, this 19th day of August, 1993, the orders of the Court of Common Pleas of Lancaster County in the above-captioned matter are hereby affirmed.

---

6. For reasons unknown to this Court, Sommers did not use Paulson's services and instead employed R. Russell Pugh, Esquire, who represented Sommers both in Common Pleas and before this Court. We agree with Common Pleas, however, that the city council fulfilled its duty to provide Sommers with counsel, when it authorized Paulson to represent Sommers.