## Evans et al. v. Roberts et al.

*Equity practice and jurisdiction—Vicious dog—Residential neighborhood —Injunction.*

The keeping or maintaining of a vicious or dangerous dog in a residential neighborhood is a public nuisance which a court of equity will restrain at the suit of resident owners of property in the immediate neighborhood, as such resident owners suffer an injury which is, to them, peculiar, special and direct.

Bill in equity to abate a nuisance. C. P. No. 2, Phila. Co., Dec. T., 1924, No. 9985.

*S. Lloyd Moore* (for *Allen M. Stearne*), for plaintiffs.

*Edward Merchant* and *Theodore F. Jenkins*, for defendants.

GORDON, JR., J., March 24, 1925.—This is a bill in equity brought by Samuel W. Evans, Jr., and T. Comly Hunter against Virginia B. Roberts, Virginia (or Jennie) Peck and Irene S. Roberts to abate a nuisance which the plaintiffs claim the defendants maintain upon their premises at No. 4618 Leiper Street, in the City of Philadelphia. The nuisance complained of is the keeping and maintaining on said premises of an alleged vicious and dangerous dog, and permitting it to roam at large thereon, and upon the premises of the

plaintiffs and other persons living in the neighborhood. The plaintiff, Samuel W. Evans, Jr., lives at No. 4616 Leiper Street; the plaintiff, T. Comly Hunter, at No. 4624 Leiper Street; and the defendants at No. 4618 Leiper Street, the three residences being contiguous. The defendant, Virginia B. Roberts, is the owner of the property in which the defendants live, and the mother of Irene S. Roberts and Virginia Peck, the latter of whom is the owner of the dog in question.

The dog is a large, muscular and powerful male German Shepherd dog, commonly known as a German "Police Dog," and possesses the typical wolf-like and terrifying appearance of dogs of this breed. It answers to the name of "Peter," and has been kept by the defendants on the premises in question since it was a six months old pup. It is now three and a-half to four years of age.

It seems from the evidence that during the early part of the dog's life it showed no signs of a wicked or ferocious disposition, and frequently was petted or played with by one or both of the plaintiffs and their families, and by other persons in the neighborhood. As the dog grew older, however, it began to give evidence of a vicious nature, and during the last six months or a year this dangerous trait of character has steadily developed. The defendants contended that they have at all times endeavored to keep the dog in restraint or under leash, and that it has not been allowed to roam at large to the nuisance of the neighborhood. This contention, however, is not supported by the evidence, and from the facts which shall hereafter be stated, it is apparent that the dog is either allowed by the defendants to roam at large or they are unable at all times to restrain its natural propensities in this regard.

Approximately a year before the initiation of this proceeding, Earl Boswell went to the defendants' house on an errand. The dog was in the yard at the time and was barking. When he went on the porch, the dog leaped at him and bit him. The bite was not serious, no blood being drawn.

In August, 1924, Helen Paul Manley was on the public highway in front of or near the defendants' residence, talking to Mrs. Roberts, one of the defendants. The dog came out of the yard at this time, and when Miss Manley left the defendant and crossed the street, the dog flew at her and bit her on the thigh. Its teeth did not penetrate through the witness's clothing, but the bite was severe enough to render her lame for a while, and she testified that she still has a mark of a bite upon her.

On one occasion in the month of September, 1924, when the eight-year-old son of Herman Blum, a resident of the neighborhood, returned home from school, he was evidently frightened, and reported to his mother that the dog had jumped upon him in the street and terrorized him.

W. Howard Holden, who resides at No. 4667 Leiper Street, testified that his daughter, Marion Berl Holden, who, at the time of the hearing, was traveling upon the Pacific Ocean, was bitten by the dog in the arm while she was calling at the defendants' house. This hearsay evidence was corroborated by the testimony of two of the defendants, Mrs. Virginia Roberts and Miss Irene Roberts, who admitted that the biting had occurred, but who contended that it was an accidental biting by the dog. They also testified that they paid the bill of the physician, Dr. Charles N. Sturtevant, who treated Miss Holden for the wound resulting from the bite.

Dr. John V. Allen testified that about three or four months before the date of the hearing he treated Miss Ann Spotts, a lady of upwards of seventy-two years of age, who was unable to appear at the hearing of the cause, for two

dog bites inflicted upon her thigh. Because of the inability of Miss Spotts to attend the trial, there is no competent evidence to justify us in finding that these bites were inflicted by the defendants' dog. The doctor testified, however, without objection from the defendants, that Miss Spotts had told him that Mrs. Roberts's dog had bitten her.

William Armstrong, the letter-carrier of that neighborhood, testified that he was afraid to enter the defendants' yard because of the presence of the dog, which had tried to bite him on several occasions.

Upon one occasion, the witness, Emmett O'Neill, a resident of the neighborhood, saw the dog leap upon a newsboy on the highway. It bit at the boy three times and each time appeared to have succeeded, at least in biting his clothing. The child screamed and ran away.

In the fall of 1924, Walter Smith, a laundryman, was delivering laundry at the defendants' house. The dog leaped out of a window at him, seized his sweater and shirt in his teeth and tore them.

Walter McHugh, a truck driver for the plaintiff Evans, who visits this plaintiff's home daily, testified that the dog has snarled and barked at him upon many occasions, and once seized him by the coat.

These are the only specific acts shown by the plaintiffs involving a direct attack and biting of persons by the dog. All of the witnesses for the plaintiffs, however, testify, and we find, that, when loose, the dog habitually roams at large, not only upon the plaintiffs' properties and those of other residents of the neighborhood, but also upon the public highway; that it barks and snarls at persons with whom it comes in contact, frequently leaping over fences and hedges to run after them and terrify them, and that it bears the reputation in the neighborhood of being a savage and dangerous dog. It is but fair to say that at least some of its conduct in this regard may have been more playful than vicious, and that it is very likely that the animal is not at all times ferocious. Nevertheless, these actions of the dog have inspired terror and fear of it in the minds of the plaintiffs and many of their neighbors, and in others who pass through Leiper Street, or desire to visit the homes of the plaintiffs, and thereby the full and fair use and enjoyment of their properties by the plaintiffs and other neighbors is interfered with and diminished.

The defendants called a number of witnesses, most of whom lived at a distance from the defendants' residence, and who knew the dog only through visits which they paid to the defendants. The testimony of these witnesses is to the effect merely that they had never seen the dog do anything which would indicate a vicious or dangerous disposition. This testimony, of course, cannot overcome the direct and positive testimony of persons living in the neighborhood as to the general annoyance of the dog and as to specific acts of viciousness. The defendants themselves testified that the dog was of a kindly and gentle nature, and either directly contradicted or attempted to minimize or explain away the many specific acts of viciousness which were testified to by the plaintiffs and their witnesses.

The plaintiffs called to the witness-stand a veterinary doctor, who testified to the general vicious and treacherous character of dogs of this breed. In reply to this evidence, the defendants called a police dog trainer, who saw the dog within a few days of the trial, and who testified that, in his opinion, it was a gentle dog and was not of a vicious disposition. It is not necessary to discuss the testimony of these witnesses, in view of the direct detailed and convincing evidence of the savage and treacherous nature of the dog in question.

Evans et al. *v.* Roberts et al.

Taking the evidence as a whole, we are forced to the conclusion that the affection for the dog which its owners naturally possess, and to whom its vicious traits would not be likely to be as apparent as to strangers, has colored their judgment of its true character, and that the overwhelming weight of the evidence establishes that the dog is a dangerous and vicious animal, a menace to the peace and security of the neighborhood, and that its presence on the defendants' property is a nuisance, which seriously interferes with the full and legitimate use and enjoyment by the plaintiffs of their homes and properties.

It is well established that the keeping or maintaining of a vicious dog is a nuisance: Quigley *v.* Adams Express Co., 27 Pa. Superior Ct. 116; Mann *v.* Weiand, 81* Pa. 243; Wood on Nuisances, § 765; Com. *v.* McClung, 3 Clark, 413. The defendants earnestly contend, however, that the keeping of a vicious dog is a public nuisance only; that equity has no jurisdiction to restrain the commission of a public nuisance at the suit of a private person; and that the only remedy for abating such a nuisance is by indictment in the Quarter Sessions Court, or by proceedings by the Attorney-General or the district attorney. In support of this contention the defendants cite Sparhawk *v.* Union Passenger Ry. Co., 54 Pa. 401; Com. *v.* Smith, 266 Pa. 511; Reading *v.* Com., 11 Pa. 196. There is no doubt of the correctness of this contention where the nuisance complained of is purely public in character, and does not affect the private plaintiff in any manner, or to any degree, differently from other citizens. An inspection of the cases cited by the defendants show them all to be instances of purely public nuisances, in which the parties complainant were not specially and peculiarly damaged by the alleged nuisance.

It is equally well settled, however, that equity will give relief to a private citizen who suffers injury from a public nuisance which is peculiar, special and directly injurious to him. The fact that a nuisance is public in character will not defeat a private right if at the same time it partakes of the nature of a private nuisance. The fallacy of the defendants' argument lies in a misconception of the decisions relating to public nuisances. Wherever equity has refused relief upon this ground, it will be found that the party complainant was not injured in his private capacity, but only as a member of the body politic. Our reports abound in instances in which equity has intervened, at the suit of a private citizen, to restrain the maintenance of a public nuisance where the complaining citizen was specially injured. A reference to a few of these decisions will be sufficient. For example, courts of equity have restrained the maintenance of powder magazines and explosives in the neighborhood of dwelling-houses, Wier's Appeal, 74 Pa. 230, McDonough *v.* Roat, 8 Kulp, 433; the unnecessary ringing of church bells, St. Mark's Church's Appeal, 34 Legal Intell. 222; the dissemination of offensive odors from manufacturing establishments in a residential neighborhood, Evans *v.* Reading Chemical Fertilizing Co., 160 Pa. 209; the creation of unnecessary noises, Wallace *v.* Auer, 10 Phila. 356, Ladies' Decorative Art Club's Appeal, 22 W. N. C. 75; the maintaining of pig-sties in a populous city, Sellers *v.* Pennsylvania Ry. Co., 10 Phila. 319; the slaughtering and keeping of pigs in built-up sections, Schandein *v.* Bach, 11 W. N. C. 202; the maintaining of bone-boiling establishments in residential neighborhoods, Czarniecki's Appeal, 35 Pitts. (O. S.) L. J. 153.

No case has been called to our attention in which the keeping of a vicious dog has been enjoined, and a careful search of the authorities has disclosed none to us. In Hechelman *v.* Kindt, 22 Dist. R. 791, however, the court

### Evans et al. v. Roberts et al.

enjoined the keeping of a barking dog at the suit of a physician, a neighbor, whose work in his office was disturbed. So, also, in Chambers v. Walker, 57 Pitts. L. J. 210, the keeping and breeding of a number of dogs in a residential neighborhood of a borough was held to be a nuisance, where it was shown that the barking and howling of the dogs seriously interfered with the peace and comfort of several residents, and an injunction was granted on a bill filed by one of the residents who was especially annoyed. We see no reason for drawing a distinction between the keeping of a barking dog, whose disturbances amount to a nuisance, and the keeping of a vicious and biting dog, whose actions threaten the safety and even the life of neighbors. It is unthinkable that a court of equity could grant relief to one injured in property and in health by the barking and howlings of a dog, but would be forced to advise the same person that, if the dog was vicious and likely to maim or kill him, no relief could be granted, and that he must wait until his body is injured or his life taken before he or his heirs could secure relief or compensation. Such an anomaly cannot and does not exist in the law.

There are few nuisances more annoying or more threatening to individual and public safety, or from which the inhabitants of a populous city are more entitled to be protected, than a vicious and biting dog. A gentle dog in the home, even in the heart of a city, may be a desirable companion to man. But the right to keep it is subject to reasonable supervision, and ceases when the temper of the animal threatens the safety and peace of those living in the neighborhood, who, by proximity, are specially injured and endangered by its immediate presence and activities, and at whose request equity will interfere to afford protection. The ordinary right freely to have and enjoy property, possessed by every citizen, must be subservient to the interests of those whose rights are injuriously affected by its use, and it is the duty of the owner of a vicious dog to remove such a threat to the comfort and safety of his neighbors. *Sic utere tuo ut alienum non lædas.*

Notwithstanding the fact that the defendants, as they assert, have done all that they can to keep the dog under constant restraint and on their own property, it is evident, from the habits of the dog and its many proven acts of viciousness, that they are unable to keep it on their property under a restraint adequate to insure protection to the plaintiffs and to the public. We cannot, therefore, temporize with the situation by placing conditions and terms of restraint upon the further keeping of the dog on the property in question. To do so would be merely to minimize the nuisance and not to abate it, and would require constant supervision to enforce obedience to our decree. The only effective remedy is to direct the removal of the dog from the premises and to enjoin the defendants from further keeping it thereon. Irene S. Roberts is neither the owner of the dog nor of the property on which it is kept, and, therefore, the plaintiffs are not yet in need of equitable relief as to her. With respect to the other defendants, the plaintiffs are entitled to the relief which they seek, and the court, therefore, enters the following

### Decree.

And now, to wit, March 24, 1925, this cause having came on to be heard at this term of court upon bill, answer and proof, upon consideration thereof, it is ordered, adjudged and decreed:

1. That the defendants, Virginia B. Roberts and Virginia (or Jennie) Peck, and each of them, be and they are hereby directed to remove said dog from the permises, No. 4618 Leiper Street, Philadelphia, Pennsylvania, if they have not already done so.

2. That the said defendants, Virginia B. Roberts and Virginia (or Jennie) Peck, be and they are hereby perpetually restrained and enjoined from keeping or maintaining said dog in or about said premises or in the neighborhood thereof.

3. That the bill be dismissed as to the said Irene S. Roberts.

4. That the defendants, Virginia B. Roberts and Virginia (or Jennie) Peck, pay the costs of these proceedings.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.