Earhart v. Board of Supervisors.

456

Argued September 7, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS. Judge BLATT did not participate.

*Michael J. Perezous,* with him *Xakellis, Perezous and Mongiovi,* for appellant.

*Lawrence E. Stengel,* with him *Rengier, Musser & Stengel,* for appellee.

OPINION BY JUDGE ROGERS, October 25, 1972:

This is an appeal from an order of the Court of Common Pleas of Lancaster County dismissing appellant Rufus Earhart's action in mandamus against the Board of Supervisors of West Cocalico Township. Appellant sought to compel the Board to issue him a license for the operation of a junkyard.

Earhart submitted an application for a junkyard license for a property described as being located on Sandy Hill Road, pursuant to West Cocalico Township's Ordinance Number 3. The Board of Supervisors refused to grant the license for the stated reason that another junkyard operated by Earhart at the village of Stevens in the township was a nuisance, also noting in its letter of refusal that Earhart had moved junked vehicles onto the Sandy Hill premises without the license for which he was making application and that some of the movements had been made on Sunday in violation of a provision of Ordinance Number 3.

That the Stevens junkyard had been the subject of neighborhood complaint and that Earhart was engaged in an unlicensed operation on the Sandy Hill site were established at the hearing below. It was additionally shown that the township had sought and obtained, by consent, a decree in equity ordering Earhart's compliance with the regulations of Ordinance Number 3 in his conduct of the Stevens yard.

The ordinance in question was enacted pursuant to Section 702 of the Second Class Township Code, and is a systematic and unified scheme for the licensing and regulation of persons engaged in the junk business within West Cocalico Township.[1] Section 2 of the Ordi-

---

[1] Section 702 of Article VII of The Second Class Township Code, Act of May 1, 1933, P. L. 103, as amended, 53 P.S. §65758,

nance provides: "No persons shall engage in business as a junk dealer in the Township of West Cocalico without first having obtained a license from the Supervisors. The fee for the initial license shall be Two hundred dollars ($200.00) for any junk dealer not already maintaining premises for the storage of junk in West Cocalico Township. The fee for each renewal thereof, and for any junk dealer presently maintaining premises for the storage of junk in West Cocalico Township shall be Twenty five dollars ($25.00). Such fee shall be for the use of the Township. Such license shall be renewed annually on or before the first day of January of each year. PROVIDED: In any case where a junk dealer's business shall be established in the Township on or after the first day of July in any year, the license fee payable by such junk dealer for the remainder of such year shall be at one-half of the yearly rate." Section 3 provides: "The license provided for in the second section of this ordinance shall be issued by the Supervisors after application shall have been made therefor by the person desiring to be licensed. Such license shall state the name of the person to whom such license is issued and the premises from which such business is to be conducted. Such license shall be posted conspicuously upon the premises licensed thereunder. The name of the licensed junk dealer and the number of the license under which he operates shall be placed in a conspicuous place on the outside of every vehicle used for business purposes by such dealer." Other sections of the Ordinance set forth requirements for the keeping of records by the licensed dealers and the main-

---

empowering supervisors: "To regulate and license junk dealers and the establishment and maintenance of junkyards and scrapyards including, but not limited to, automobile junk or grave yards and to prescribe license fees therefor not to exceed two hundred dollars per year."

tenance of licensed premises so it will not constitute a nuisance or a menace to health and safety of the community, including detailed regulation of the manner of storage and arrangement of junk as well as fencing and planting requirements.

Appellant contends that the language of Section 3, stating "[t]he license . . . shall be issued by the Supervisors after application shall have been made . . . ," leaves the Supervisors with no discretion in determining whether a license should issue, and hence that the court should issue its writ in mandamus to compel the issuance to him of a license regardless of his past conduct.

The use in statutes of the word "shall" does not require mandatory interpretation. In *Pleasant Hills Borough v. Carroll*, 182 Pa. Superior Ct. 102, 125 A. 2d 466 (1956), Judge WOODSIDE wrote: "Except when relating to the time of doing something, statutory provisions containing the word 'shall' are usually considered to be mandatory, but *it is the intention of the legislature which governs, and this intent is to be ascertained from a consideration of the entire act, its nature, its object and the consequences that would result from construing it one way or the other.*" (Emphasis supplied) 182 Pa. Superior Ct. at 106, 125 A. 2d at 468. There the Superior Court declined to invalidate a municipal taxing ordinance which contained no statement that it was enacted under the authority of the Act of June 25, 1947 despite a provision in the Act, as amended, requiring that such an ordinance ". . . *shall* state that it is enacted under the authority of the Act of June twenty-fifth, one thousand nine hundred forty-seven. . . ." (Emphasis supplied)

In *Francis v. Corleto*, 418 Pa. 417, 211 A. 2d 503 (1965), our Supreme Court refused to compel the City of Philadelphia to grant vacation pay to City em-

ployees guilty of misconduct in office, despite language in the City's Civil Service Regulations that the said compensation "shall" be paid. Justice ROBERTS wrote: "Under the circumstances here presented, we will not construe the word in its mandatory sense, thereby taking from the City its right to recoup at least some of its losses incurred by reason of plaintiffs' misconduct in office. It would be incredible indeed to hold that plaintiffs are entitled to compensation for a period during which they were actively working to the detriment of their public employer or that such result was intended or could have been countenanced by City Council in adopting the civil service regulations." 418 Pa. at 429, 211 A. 2d at 509.

In *Murray v. Williams, Burgess,* 162 Pa. Superior Ct. 633, 60 A. 2d 402 (1948), an unsuccessful applicant for a pinball machine license required by a Borough Ordinance was refused a writ requiring the licensing officer to issue the license. The officer was held to have properly denied the license on the ground that the applicant previously violated the same ordinance. The only distinction between *Murray* and the case at hand is that the ordinance in *Murray* spoke of issuing the license "after investigation" whereas the West Cocalico one speaks of issuance "after application." The determination of whether the action sought to be enforced by the court is mandatory or discretionary should hang on no such insubstantial distinction.

The court below correctly construed the ordinance here as providing for discretion in the issuance of licenses. The licensing sections when read with other provisions are plainly only parts of a comprehensive plan for regulating junkyards in West Cocalico Township. Section 62 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 P.S. §562, requires parts of statutes relating to the same things or class

of things to be construed together. The same rule applies in the construction of ordinances.[2] As noted, the instant ordinance contains detailed regulations for the operation and management of junkyards. Reasonable competence, a sense of responsibility and a disposition to observe regulations would be required of anyone pursuing this endeavor in West Cocalico Township in compliance with its regulations. We cannot construe this ordinance as a whole as requiring automatic permission to engage further in this sensitive enterprise to one who has, and is presently, either violating the rules or observing them under court order.

Furthermore, mandamus is an extraordinary remedy the grant of which rests in the sound discretion of the court applied to, and is not a writ of right. As the Supreme Court stated in the *Francis v. Corleto* case, *supra*: "Although granted by the law side of the court, mandamus is essentially equitable in nature, requiring the application of equitable principles. It is reserved only for those situations where necessary to promote the ends of justice and where the prayer of the petitioner appeals to the conscience of the court." 418 Pa. at 429, 211 A. 2d at 509. In *Waters v. Samuel,* 367 Pa. 618, 80 A. 2d 848 (1951), a writ directing that a city employee be restored to the civil service list was refused where the employee's retirement had been ordered based upon his own false overstatement of his age when applying for employment. Justice (later Chief Justice) BELL concluded his opinion with the following paragraphs which seem altogether appropriate here:

"A writ of mandamus is not a writ of right; and whether mandamus shall issue is a matter for the exer-

---

[2] *Cloverleaf Trailer Sales Co. v. Pleasant Hills Borough,* 366 Pa. 116, 76 A. 2d 872 (1950) ; *see also Lower Providence Township and Wood v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971) (concurring opinion of ROGERS, J.).

cise of a sound discretion by the court: Gold v. Building Committee of Warren Borough, 334 Pa. 10, 5 A. 2d 367; Reading v. Commonwealth, 11 Pa. 196; Achuff's Appeal, 12 Pa. Superior Ct. 573.

"If the interests of the general public would be injuriously affected, or if the object sought to be obtained is inequitable, or oppressive, or excessively burdensome, or is likely to create disorder and confusion in municipal or governmental departments, the courts may, in their discretion, refuse to issue the writ: Sinking Fund Commissioners v. Philadelphia, 324 Pa. 129, 135, 188 A. 314; Wallace v. Board of Education of Los Angeles, 147 P. 2d 8; Oystermen's Dock Co. v. Downing, 249 N.Y.S. 558, 232 App. Div. 295; 34 Am. Jur. 833, §40; 35 Am. Jur. 16, §240; 55 C.J.S. Mandamus §10a. Of course, the Court's discretion must be exercised on equitable principles and in accordance with well-settled rules of law: 55 C.J.S. Mandamus, §10, pp. 32, 33. We cannot say that the lower court abused its discretion in refusing to award a writ of mandamus." 367 Pa. at 621-22, 80 A. 2d at 849.

We, too, cannot say that the court below abused its discretion in refusing to compel the issuance to Rufus Earhart of a license to conduct a junkyard he has established in disregard of the same licensing provisions he now invokes.

Affirmed.

Judge MENCER concurs in the result only.